Marshall G. Mintz (Bar No. 51164) mmintzlaw@gmail.com
MINTZ LAW GROUP
11400 West Olympic Blvd., Suite 200
Los Angeles, California 90064
Telephone: (310) 914-0183
Facsimile: (310) 914-0185
Attorneys for Plaintiff
ADEL F. SAMAAN, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL F. SAMAAN, M.D., an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POSTAL WORKERS UNION (APWU) HEALTH PLAN, a national preferred provider organization; AMERICAN POSTAL WORKERS UNION, a corporation organized under the Nonprofit Mutual Benefit Corporation Law; CIGNA CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(g)(1)** |

/ / /

/ / /

Plaintiff, ADEL F. SAMAAN, M.D., alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. §1132(e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act ("ERISA").  To the extent this action involves rights, duties and obligations of the parties that do not involve ERISA benefits recovery claims, jurisdiction arises pursuant to 28 U.S.C. §1367 and principles of supplemental jurisdiction, as any such non-ERISA claims are so related to the ERISA claims in this action that they form a part of the same case and controversy under Article III of the United States Constitution.

2.     This Court is the proper venue for the action pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Central District of California, and pursuant to 29 U.S.C. §1132(e)(2) because this is the Judicial District where the breaches took place, and because the defendant conducts a substantial amount of its business in this Judicial District.

## II.     THE PARTIES

### A.     The Plaintiff

3.     Plaintiff Adel F. Samaan, M.D. ("Samaan") is an individual doing business as a medical doctor in the County of Los Angeles, State of California.  Dr. Samaan's primary area of medical practice is as a surgeon in the field of gynecology.

### B.     The Defendants

4.     Plaintiff is informed and believes, and alleges thereon, that Defendant American Postal Workers Union (APWU) Health Plan ("APWU") is a national preferred provider organization that offers both a fee-for-service High Option plan

and a Consumer Driven Option Health Plan.  Plaintiff alleges that APWU is located in Glen Burnie, Maryland and is a department of the American Postal Workers Union.

5.     Plaintiff is informed and believes that Defendant American Postal Workers Union is a corporation organized under the Nonprofit Mutual Benefit Corporation Law, with its principal place of business located at 1239 Howard Street, San Francisco, California  94103.

6.     Plaintiff is informed and believes that Defendant CIGNA Corporation ("CIGNA") is a corporation incorporated under the laws of the State of Delaware with its principal place of business located at 900 Cottage Grove Road, Bloomfield, Connecticut.

7.     Plaintiff is informed and believes that APWU and CIGNA serve as the claims administrators and/or the insurance plan underwriters of employee health benefit plans covered by ERISA (hereinafter referred to as the "ERISA Plan" or a "Plan") that provides, among other benefits, reimbursement for medical expenses incurred by individual Plan participants and beneficiaries covered under the Plan. Beneficiaries covered under the Plan include members of the American Postal Workers Union and their eligible dependents.  Samaan is informed and believes that it is the responsibility of CIGNA, as the claims administrator for the covered employees of the Defendant American Postal Workers Union, to decide which healthcare benefits claims will be paid under the Plan; how much will be paid; and which benefits claims will not be paid, and thereafter to pay benefits to claimants such as Samaan directly out of Plan assets that are within the unfettered control of APWU in the ordinary course of business.

8.     Plaintiff is informed and believes that CIGNA and APWU carry out services and functions as a healthcare benefits claims administrator.  Acting with respect to members of the American Postal Workers Union and their eligible dependents during the period March 1, 2016 through and including January 18, 2017,

CIGNA and APWU reviewed and evaluated Plaintiff's claims for reimbursement for services rendered to members of the American Postal Workers Union and their eligible beneficiaries.

9.      As alleged *infra*, Samaan alleges that Defendants CIGNA and APWU acted in an arbitrary and capricious manner by underpricing, undervaluing, underpaying and/or entirely failing to pay the benefits claims submitted by Dr. Samaan.

## C.      The Doe Defendants

10.      The true names and capacities of the Defendants sued herein as DOES 1 – 50 inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that these DOE Defendants are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff Samaan for services rendered, as alleged hereinafter.  The Complaint will be amended to allege the true names and capacities of the DOE Defendants when they have been ascertained.

## III.      FACTS UNDERLYING DR. SAMAAN'S CLAIMS FOR DAMAGES

11.      Dr. Samaan has provided healthcare services to members of the American Postal Workers Union and their eligible dependents on numerous occasions where the benefits to those persons are administered and/or underwritten by Defendant APWU.  For some Plan beneficiaries and their dependents, Dr. Samaan has provided healthcare services on more than one occasion.

12.      The Plan has some deductible or copay obligation to be paid by Plan members and dependents, and the Plan typically pays an out-of-network provider such as Dr. Samaan something less than 100% of Dr. Samaan's billed amounts.  The deductible and copay requirements, and the percentage payable to an out-of-network

provider such as Dr. Samaan, are typically set forth in the Plan documents themselves.

13.     When Plan members and/or their dependents came to Dr. Samaan for medical services, they presented medical insurance cards in the name of "APWU" and the relevant insurance contact information on each medical insurance card would direct Dr. Samaan to CIGNA HealthCare in various locations, depending on each specific medical insurance card presented to Dr. Samaan.

14.     As a condition to the provision of services by Plaintiff, each patient was required to sign an agreement assigning his or her ERISA Plain rights and benefits to Plaintiff in their entirety.  Each assignment of benefits would provide for Plaintiff to be paid directly for the services provided to the patient, and Plaintiff has received a written assignment of benefits in connection with every outstanding benefits claim event at issue in this action.  The assignment agreement would designate Plaintiff in such manner that Plaintiff would stand in the shoes of the members/patients to seek, claim and obtain anything that the member/patient would have been entitled to receive under the applicable healthcare coverage administered and/or underwritten by CIGNA and/or APWU.  A true and correct copy of Dr. Samaan's form of assignment agreement is attached hereto as Exhibit "A."

15.     For each claim event at issue in this case, Dr. Samaan's custom and practice was to contact a CIGNA representative by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services.  The regular practice was that Dr. Samaan's office personnel and the CIGNA representative would discuss the proposed surgery event by telephone in advance of the services being performed , and in each such telephone communication the CIGNA representative would advise Dr. Samaan's office personnel that coverage existed for the patient and that benefits were properly payable to Dr. Samaan as an "out-of-network" provider.  The following sets forth in summary form the substance of the telephonic communications between Dr. Samaan's representative and the

1  CIGNA entity representative which occurred prior to services being performed  in

2  connection with Dr. Samaan's claims which are asserted in this case:

3      (a)    For each claim event, Dr. Samaan's representative would call the

4  CIGNA claim office on the CIGNA toll free line set forth on the member

5  identification card presented by the patient.

6      (b)    The answering party would identify himself or herself as a

7  representative of a CIGNA entity, thereby confirming to Plaintiff's representative

8  that the communication was with the authorized claims administrator for the Plan.

9      (c)    Dr. Samaan advised CIGNA that he was an "out-of-network" provider

10  to the Plan, and accordingly was calling CIGNA in advance of performing services

11  to ensure that in each instance that he would be paid for his services by APWU upon

12  CIGNA's approval in the claim event.

13      (d)    In each claim call, Dr. Samaan's representative would advise the

14  CIGNA representative of the identity of the Plan member or dependent; the CPT

15  code for the surgical procedure to be performed (the CPT code is the medical

16  procedure descriptive identifier; CPT means "Current Procedural Terminology");

17  and that the purpose of the call was to verify the existence of coverage for the patient

18  and the eligibility of Dr. Samaan for payment of benefits as an out-of-network

19  service provider.

20      (e)    The CIGNA entity representative would respond by advising Dr.

21  Samaan's representative about the percentage of out-of-network billing covered

22  under the Plan (typically between 50% and 100%); the amount of the patient's

23  deductible; and whether benefits would in fact be payable to Dr. Samaan based on

24  the CPT code provided.  The CIGNA representative would also advise Dr. Samaan's

25  representative whether specific pre-authorization for the proposed surgical procedure

26  was required.  At no time was Dr. Samaan's representative ever advised by any

27  CIGNA representative that he was not eligible to receive benefits for the proposed

28  surgical event in question on the basis of an "anti-assignment" clause in Plan

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(g)(1**

1    documents or on any other basis which might disqualify Dr. Samaan as a rightful and

2    proper recipient of Plan benefits.

3         (f)          After the CIGNA representative verified that that specific

4    treatment was covered and that Dr. Samaan as an out-of-network provider was

5    eligible for payment, Plaintiff would perform the procedure for which verification

6    was obtained.

7         16.    Dr. Samaan reasonably relied on the CIGNA representative's telephonic

8    representations:  (a) by providing medical services to the individual patient(s) in

9    response to the CIGNA representative's statements about his eligibility to receive

10   benefits; and (b) by providing medical services to other Plan members and their

11   dependents on an ongoing basis in reliance on the CIGNA representative's repeated

12   representations that the patients were covered and that Dr. Samaan was eligible to

13   receive out-of-network benefits on the benefits formulations as stated.  But for the

14   advance representations of the CIGNA representative in setting out the applicable

15   benefits payment formulations, Dr. Samaan would not have provided, or continued

16   to provide, medical services to Plan members and dependents for Plans issued by

17   APWU and administered by CIGNA.

18        17.    Dr. Samaan has billed CIGNA for services rendered to Plan members

19   and their dependents in connection with each of the claim events at issue in this case.

20   By way of his patient assignments, Dr. Samaan stands in the shoes of his patients

21   where benefits claims, and the pursuit of those claims, are concerned.

22        18.    In connection with each of the claims where services were provided, Dr.

23   Samaan's billings submitted to CIGNA set forth the date of the service, the nature of

24   the services rendered, the identity of the insured member and/or dependent, the

25   patient's date of birth, and the applicable Plan ID number.  Each of Dr. Samaan's

26   claim billings set forth all requisite information in standard form terminology with

27   sufficient detail to enable CIGNA to consider and pay the claim in the ordinary

28   course of business.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(g)(1**

19.   The charges for healthcare services submitted by Dr. Samaan to CIGNA were in all instances usual, customary and reasonable, and in accord with Dr. Samaan's charges to non-Medicare patients insured by companies other than APWU. Dr. Samaan's charges for services submitted to CIGNA were also in accord with the charges of other medical service providers in the community having similar training or expertise as Dr. Samaan; operating in the same geographic area as Dr. Samaan; and providing healthcare services and facilities comparable to those provided by Dr. Samaan.

20.   As alleged hereinbelow, CIGNA has abused its discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay Dr. Samaan's claims in accordance with ERISA requirements, practices and provisions, and Dr. Samaan has suffered resulting damages in an amount to be proven at trial. Exhibit "B" attached to this complaint is a summary listing of the benefits claims for which Dr. Samaan seeks recovery in this lawsuit.

21.   As an "out-of-network" healthcare services provider, Dr. Samaan is entitled to receive payment of insurance benefits under the Plan provided by APWU to its members and beneficiaries, and administered by CIGNA.  One of the reasons why Dr. Samaan contacted a CIGNA representative by telephone prior to performing his services was to verify in advance that an out-of-network provider such as Dr. Samaan was indeed eligible to receive benefits for services to be performed under the Plan, and in response to each such communication CIGNA's representative represented to Dr. Samaan's representative that out-of-network benefits were payable to Dr. Samaan.

22.   Plaintiff is informed and believes, and alleges thereon, that the standard practice in the healthcare insurance industry is that ERISA Plan members and/or beneficiaries are typically free to decide whether they would prefer to utilize an out-of-network provider or an in-network provider for their healthcare needs.  The standard practice in the healthcare industry is that an out-of-network provider such as

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B) AND REASONABLE
ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(g)(1

Dr. Samaan would expect to receive something less than his full billing rate if the actual rates charged by the service provider are higher than the "usual, customary and reasonable ("UCR") rate charged by other comparable professionals for the same or similar services in the provider's local community.  In the event that Dr. Samaan's billing rate exceeded the UCR rate, a Plan administrator, such as CIGNA, would have a proper basis to apply the lower of actual billed charge amounts or UCR charge amounts for the same or similar services.  However, with respect to the benefits claims at issue in this lawsuit, Dr. Samaan's actual charges billed are one and the same as, or lower than, the usual, customary and reasonable rates charged by comparable physicians in the geographic area serviced by Dr. Samaan.  Accordingly, with respect to Dr. Samaan's claims, there should have been no "repricing" or "UCR rate reduction" where benefit claims were concerned.  There is no legitimate basis for repricing to the lower of actual charges or UCR where the actual charges and the UCR charges are one and the same, or where actual charges are lower than UCR, and to the extent that CIGNA undertook to "reprice" Dr. Samaan's claims to comport with illegitimately low or fictional UCR rates, the repricing by CIGNA was arbitrary and capricious, and constituted an abuse of discretion by CIGNA in its role as Plan administrator for the Plan involved in this lawsuit.

23.     ERISA governs all aspects of health and medical benefits under ERISA Plans, and authorizes a civil action to recover unpaid benefits and attorney's fees.

24.     Dr. Samaan has standing to sue under ERISA as an assignee of benefits due to Plan members and their dependents.  A member or dependent of a member is expressly empowered by §1132(a) of ERISA to sue for denial of benefits, and nothing in ERISA precludes a Plan member or a dependent of a Plan member from validly assigning his or her right to benefits.  In the event of such an assignment, the assignee (in this case, Dr. Samaan) stands in the shoes of the member or the member's dependent with full standing to sue for benefits.

1       25.    CIGNA is a proper party defendant in an ERISA benefits recovery

2   action.

3

4   **IV.    DR. SAMAAN IS DEEMED BY LAW TO HAVE EXHAUSTED**

5           **ADMINISTRATIVE REMEDIES**

6       26.    The applicable claims procedure regulations governing ERISA Plans are

7   set forth in 29 C.F.R. §2560.503.1.  This section sets forth the minimum

8   requirements for employee benefit plan procedures pertaining to claims.  29 C.F.R.

9   §2560.503-1(a).

10       27.    The central obligation set forth in the regulations is that:  "Every

11   employee benefit plan shall establish and maintain reasonable procedures governing

12   the filing of benefit claims, notification of benefit determination, and appeal of

13   adverse benefit determination."  29 C.F.R. §2560-503-1(g)(1).  Of particular

14   significance in this case are the regulations dealing with "Manner and Content of

15   Notification of Benefit Determination" set forth in 29 C.F.R. §2560-503-1(g)(1).

16   That section requires that the plan administrator shall provide a claimant with a

17   written or electronic notification of any adverse benefit determination.  The

18   regulations require the following:

19       "The notification shall set forth, in a manner calculated to be understood by

20   the claimant –

21           (i)    The specific reason or reasons for the adverse determination;

22           (ii)    Reference to the specific plan provisions on which the

23               determination is based;

24           (iii)    A description of any additional material or information necessary

25               for the claimant to perfect the claim and an explanation of why

26               such material or information is necessary;

27           (iv)    A description of the plan's review procedures and the time limits

28               applicable to such procedures, including a statement of the

claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

28.    In most cases, these notification requirements were not met in the present action. and the regulations are specific about the consequences of a failure by CIGNA to comply with notification requirements.  29 C.F.R. §2560.503-1(l) provides:

"1.    <u>Failure to Establish and Follow Reasonable Claims Procedure:</u>

In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

29.    Dr. Samaan is deemed by law to have exhausted administrative remedies available to him because Defendants, and each of them, have failed to establish and follow reasonable claims procedures as required by ERISA. Defendants, and each of them, have routinely failed to process claims submitted by Dr. Samaan in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. §2560.503.1.  Among other things, Defendants:

- Failed to set out the specific reasons for underpayment of the Samaan claims in their responses transmitted to Samaan during the administrative review process;

- Failed to reference the specific Plan provisions upon which their underpayment determinations were based;

- Failed to give a description of any additional material or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- Despite requests from Dr. Samaan, failed to provide Plan documents, or internal rules, guidance, protocols or other criteria upon which the underpayment determinations were based;

- Failed to state the underpayment determinations in a manner calculated to be understood by Dr. Samaan;

- Failed to provide a reasonable opportunity for full and fair review of the underpayment determinations;

- Employed policies designed to unduly hamper the review and appeal of claims submitted by Dr. Samaan; and

- Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

## V.   DEFENDANTS HAVE VIOLATED THEIR ERISA DUTIES AND RESPONSIBILITIES IN THE FOLLOWING MATERIAL RESPECTS

30.     Persons who receive their health insurance through a private employer-sponsored benefit plan are typically participants or beneficiaries of plans governed by ERISA.  Sometimes the ERISA plans are fully insured by health insurers like CIGNA, and sometimes are self-funded.  In either case, the insurer "network" of healthcare services providers may be available to the ERISA Plans, but the insurers also process and pay benefits claims submitted by out-of-network providers.

31.     When the ERISA Plan is administered by CIGNA, CIGNA is responsible for interpretation and application of the Plan terms, coverage and benefits decisions, appeals of coverage determinations, and processing of payments to benefits claimants such as Plaintiff.  The Plan typically will enter into an "administrative services agreement" with its insurer to perform these administrative responsibilities, and Plaintiff is informed and believes that the administrative services agreement will typically delegate to the insurer the authority and

responsibility to administer claims and make final benefits decisions based upon claim procedures and standards that the insurer develops and utilizes from its own vast experience in claims handling.  Plaintiff is informed and believes that, under its contracts, the insurer collects administrative services fees from the ERISA Plans, and has actual control over benefits determinations and the payment of benefits to healthcare services providers such as Plaintiff.

32.     The payment procedure for each of Plaintiff's claims typically begins with Plaintiff submitting to CIGNA a standard industry billing form (usually form No. 1500).  CIGNA would then typically respond to the claim by sending a "Provider Explanation of Benefits" form (commonly known as an "EOB") which would set forth an analysis of the claim and the amount to be paid by the insurer. The EOB form would typically include either codes or narrative remarks which would supposedly explain the difference between the amount billed by Plaintiff and the amount to be paid by CIGNA.  However, in the instant case, the EOBs submitted by CIGNA to Plaintiff were woefully deficient in their purported explanations of benefit payment amounts.  In practical effect, the EOBs in this case merely served as unintelligible repricing devices which reduced Plaintiff's payment amounts to a small fraction of the amounts billed, on the basis of no valid or descriptive analysis or explanation at all.  Among other things, the EOBs were deficient in that CIGNA placed reliance on third party "repricing" companies for purported analysis of UCR charges as a tool to reduce the payment due to the provider, such as Dr. Samaan.

33.     Plaintiff is informed and believes that CIGNA utilized repricing companies to perform "repricing" for the benefit of CIGNA and APWU.  These "repricing" entities acted in a coordinated process with CIGNA that was specifically designed and implemented to reduce the amounts CIGNA would pay in response to medical services provider billing amounts – irrespective of whether such "repricing" was justified or not.  Plaintiff is informed and believes that the repricing entities are in the business of "repricing for profit," and the core business purpose and central

reason for corporate existence of these entities is to collect percentage contingency fee payments from CIGNA that directly connect and correlate to the amount of "savings" that the repricing entity is able to generate through the use of their data analytics strategies.  Plaintiff is informed and believes that these repricing companies are financially interested parties in the claim "repricing" process and as such are inherently unreliable as service providers tasked with the responsibility of determining proper amounts due to service provider physicians such as Plaintiff. The "repricing" entities carry out their claim reductions in an arbitrary and capricious manner – indeed, the 60%, 70%, 80%, and even 90% reduction amounts applied by the "repricing" entities to Plaintiff's billings speak for themselves.  These self-interested entities are untrustworthy and are seeking to impose claim reductions in a manner that bears no meaningful relationship to the concepts of UCR and proper medical services billing as those concepts are legitimately understood and applied in the medical community and under applicable law.  CIGNA abused its discretion by placing undue reliance on the "repricing" entities and by utilizing billing reduction strategies premised on Medicare that have no place in a free market, private sector healthcare billing environment.

## FIRST CLAIM FOR RELIEF
### Enforcement Under 29 U.S.C. §1132(a)(1)(B) For Failure to Pay ERISA Plan Benefits and For Recovery of Reasonable Attorney's Fees and Costs Under 29 U.S. C. §1132(g)(1)

34.    Plaintiff realleges paragraphs 1 through 33 inclusive of this Complaint as though set forth in full herein.

35.    This claim for relief is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered by CIGNA for APWU.

36.     Dr. Samaan seeks to recover benefits and to enforce rights to benefits under 29 U.S.C. §1132(a)(1)(B) and under 29 U.S.C. §1132(g)(1) for recovery of reasonable attorney's fees and costs.  Dr. Samaan has standing to pursue these claims as the assignee of member benefits.  As the assignee of member benefits, Plaintiff is a "beneficiary" entitled to collect benefits, and is the "claimant" for purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. §1132(a)(1)(B) to be brought directly against CIGNA and APWU as the parties with actual control over the benefit and payment determinations with respect to Dr. Samaan's claims.

37.     By reason of the foregoing, Dr. Samaan is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Dr. Samaan seeks recovery of such benefits by way of the present action.

38.     29 U.S.C. §1132(g)(1) authorizes the Court to allow recovery of reasonable attorney's fees and costs incurred in this action.  Dr. Samaan has incurred, and continues to incur, attorney's fees and costs in his pursuit of benefits, and is entitled to recover his reasonable attorney's fees and costs in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants as follows;

1.  On the First Claim for Relief in an amount to be proven at trial in connection with the healthcare benefits claims in Exhibit "B" attached hereto.

2.  For interest at the applicable legal rate; and

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(g)(1**

1      3. For reasonable attorney's fees and costs in an amount to be proven at trial.

2

3 Dated:   June 18, 2019         **MINTZ LAW GROUP**

4                   Marshall G. Mintz

5

6             By:  \s\ MARSHALL G. MINTZ

7                  MARSHALL G. MINTZ

8                  Attorneys for Plaintiff ADEL F. SAMAAN, M.D.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28